1810.

SHOEMAKER and BERRETT *against* SMITH.

*Philadelphia,*
*Saturday,*
January 6.

E XCEPTIONS to a report of referees.

On the 14th of *April* 1801, the plaintiffs, who were insurance brokers, effected insurance for the defendant on the sloop *Susannah*, at and from *St. Croix* to *Philadelphia*, and also on goods laden or to be laden on board her, at a premium of thirty-three and a third per cent. The premium, which amounted to nine hundred dollars, not being paid when it fell due, the present action was brought to recover it; and under a rule of court, all matters in variance were referred to " *Stephen Girard* and *Joseph Ball*, and to such " third person, in case they could not agree, as they might " appoint, and then the award or report of the three or any " two of them to be final."

*If an insurance broker pays the premium to the underwriter after notice from the assured, before the premium was due, that the risk never commenced, he cannot recover it from the assured, and turn him round to a suit against the underwriter for a return.*

*No exception which does not appear wholly upon the face of the report, can be taken after the four days have expired.*

Under this rule the following report was made. " We " *Stephen Girard* and *Joseph Ball*, referees in the above rule " of court named, having appointed *James C. Fisher* to as- " sist us in determining all matters in variance between &c., " and having heard the parties, and *James C. Fisher* having " joined us in the reference, and all of us having carefully " examined all the papers and documents submitted to us, " do award and report that there is due from the defendant " to the plaintiffs, the sum of one hundred and fifty-three " dollars, and twenty-eight cents." *S. G., J. B., J. C. F.*

To this report the plaintiffs in due time filed the following exceptions: 1. That the referees proceeded on a plain mistake both in law and fact, inasmuch as the plaintiffs' claim was founded on the sum of nine hundred dollars, by them advanced to and settled in account with the underwriters on two policies on the *Susannah, Calquhoun,* and cargo, on a voyage from *St. Croix* to *Philadelphia*, for which the defendant thereby became indebted to them; whereas the referees have deducted therefrom a sum on account of a return premium, which the defendant may have been entitled to claim from the said underwriters, but not from the plaintiffs. 2. That the report should have been made in favour of the

plaintiffs for the full amount of their account, being nine hundred dollars, as above, and three dollars for policies and stamps, and not for the smaller sum which the referees have found.

Upon the examination of Mr. *Ball*, one of the referees, and an underwriter of great experience, he stated to the court, that the claim for the entire amount of premium was made by the plaintiffs, upon the ground that they had paid it to the underwriters, a fact however which the referees did not consider; because, on the 16th of *June* 1801, *a month before the premium was due*, a letter prepared by *Shoemaker* and signed by the defendant, was addressed to the plaintiffs, informing them that the goods would not be shipped, and requesting them to apply to the underwriters to cancel the policies, upon paying a certain part of the premium, which included something for the short risk on the vessel. That it was the practice for the assured to give his note for the premium to the broker, and for the broker to pass the premium to the credit of the underwriter *immediately* on making insurance; but that it was not payable until the credit on the premium expired. That the broker guarantied the premium to the underwriters, for which he received five per cent.; and that when a return premium was demanded, the broker got the underwriters to indorse on the policy an order to return it. That it had been the practice about twenty-eight years for the broker to guaranty the premium, and that he, and not the underwriters, usually brought the action for it; but that the referees thought it was the duty of the broker to obtain the order for a return, being for this purpose the agent of the assured, or at least to debit the underwriters after the notice received, and leave them and the assured to contest the matter between them. They therefore took into consideration what the underwriters ought to have returned, and what they were entitled to retain according to the practice in this city for the short risk on the vessel, and allowed it to the plaintiffs.

Mr. *Ball* stated further, that Mr. *Girard* and himself had called in Mr. *Fisher* as a third referee, before they had communicated their opinions to each other; and that Mr. *Fisher* had obtained his information from the referees and the written documents; but he did not hear the parties, nor did

Mr. *Ball* believe that the parties were informed of his being called in.

After this examination a third exception to the report was taken at the bar, viz. that Mr. *Fisher* was called in, and proceeded without hearing the parties, and without their having notice.

*Rawle* for the plaintiffs. By the usage both in *London* and *Philadelphia,* the broker alone is debtor for the premiums to the underwriter, the latter giving credit to the broker, and the broker to the assured. *Parke* 34. 6th *ed.* It is also a part of the usage for the broker to credit the underwriters in account as soon as the insurance is effected, and to guaranty the payment; so that he admits the premiums to be received by him, and can make no defence against the underwriter's claim. The broker therefore being a middle man, with whom a positive contract is made by the assured to pay the premiums, and who on his part positively engages to pay to the underwriters, without entering into any other contract in relation to the insurance, no action lies against him for a return premium. It does not lie, because he makes no engagement to return it, and because by the usage he is under an unconditional engagement to pay it over. If no action lies against the broker for a return, it follows that it cannot be deducted from his claim upon the assured. The remedy of the latter is against the underwriter; and so are always the suits for a return in *England.* To make the broker responsible, is in fact to make him insure the solvency of the underwriter as well as of the assured; for upon the principles of the award, if he had paid the premium to the underwriter who had then failed, he must still pay it back, or at least he could never recover it.

The third exception appears upon the face of the proceedings, and is therefore in time, though taken at the bar. *Buckley* v. *Durant* (a), *Kent* v. *Elstob* (b). The award expressly states that *Girard* and *Ball* heard the parties, but that *Fisher* merely examined the documents; and it is a settled rule that if the umpire examines papers or witnesses in the

(a) 1 *Dall.* 129.      (b) 3 *East* 14.

1810.

SHOEMAKER
v.
SMITH.

absence and without the knowledge of the parties, the award is bad. *Falconer* v. *Montgomery* (*a*), *Passmore* v. *Pettit* (*b*).

*M'Kean* for the defendant. Whatever may be the agreement between the broker and the underwriter, it cannot affect the rights of the assured; their practice is a private rule, and not a commercial usage. But be this as it may, the evidence does not shew even a practice against a return by the broker. In the first place, there is no absolute engagement by the broker to pay the underwriter. He guaranties the solvency of the assured, but he does not promise to pay at all events. He is to pay only when the premium shall fall due; and if before the expiration of the credit, he is informed that no risk has been run, with what propriety can the underwriters insist upon recovering it from him, or he refuse to deduct it from his claim against the assured? In the next place the broker is the agent of both parties as to the premium. It is his duty, and so is the practice, to adjust the return; and it is not to be endured, that after receiving notice that the premium is not due, he shall pay it to the underwriters, and then recover the whole from the assured. It is against natural justice, that the defendant shall pay to the agent what is not due to the principal, and then be put to a suit against the principal to recover it back. It cannot be so in *England*. If the premium has been paid after it has become due, and without notice, the case is varied; but until that takes place, the broker is the very person to settle the return.

The third exception is too late. It does not appear on the face of the award, that *Fisher* did not hear the parties; but if it did, still something more should appear there, that it was against the consent of the parties, or without their knowledge. The actual state of the fact, *dehors* the award, is of no consequence. Every thing that an exception at this time embraces, must appear clearly on the face of the award. In *Falconer* v. *Montgomery*, and in *Passmore* v. *Pettit*, the exception was taken within four days; and in *Buckley* v. *Durant* the objections on the face of the award were wholly matter of law.

<hr>

(*a*) 4 *Dall.* 232.                    (*b*) 4 *Dall.* 271.

TILGHMAN C. J. delivered judgment.

1810.

SHOEMAKER
v.
SMITH.

The exception filed by the plaintiffs to the award of the arbitrators, is founded upon a supposition that the broker is bound at all events to pay the premium to the underwriters, even though it is discovered before the time when it is payable, that it is a case in which no premium is due, because the risk never commenced. It is the custom, say they, for the broker to credit the underwriter for the amount of the premium immediately on signing the policy. The broker guaranties the premium, and collects it from the assured, who in this respect has nothing to do with the underwriter, though if it be a case of return premium, it is to the underwriter only that he must look for restitution. This custom of the broker's guarantying the premium, in consideration of which he receives five per cent. from the underwriters, may be very convenient to both these parties; but the assured has nothing to do with it, and they have no right to throw an inconvenience on him for their own benefit. A credit is given for the payment of the premium. Before the day of payment arrives, the assured finds that the underwriters never ran any risque, and therefore are not entitled to the premium. He warns the broker, who was his agent in procuring the insurance to be effected, not to pay it. If after this the broker does pay it, on what principle of law or justice can he demand the money of the assured? If indeed it was a doubtful case, it would be improper that the broker should be at the expense and hazard of defending a suit. In such a case he might call on the assured to indemnify him, and take the defence upon himself; and if he failed to do it, he might pay the money and recover it of the assured. But in the present case it is not alleged that the plaintiffs were under the least apprehension of suffering by the defendant. The arbitrators supposed that it was the duty of the plaintiffs after the notice they received from the defendant, to withhold the money from the underwriters, and endeavour to obtain justice for the assured; and in this we think they were right. The assured had a right to contest the matter before he paid his money, because in a case circumstanced like the present, the money could never be recovered of him. It is radically unjust that a man should pay money where no money is due, and then be put to his action to recover it back.

In the course of the argument, the plaintiffs' counsel have made another exception, which was not taken within the time fixed by the rule of court. But this will not prevent their taking advantage of it, if it appears clearly on the face of the award. The exception is this. That Mr. *Fisher* who was called in by the two arbitrators first named, proceeded to consider and determine the matter in conjunction with them, upon a view of the papers and the information which he received from his colleagues, without hearing the parties. This is an objection not to be favoured in this stage of the business. It has been taken up at the bar, from which it is evident that the plaintiffs themselves did not think they were injured by this mode of proceeding. Let us see then how the matter stands on the face of the award. The language of the arbitrators is as follows. " We *Stephen Girard* and *Joseph Ball* having ap- " pointed *James C. Fisher* to assist us in determining &c. " *and having heard the parties*, and *James C. Fisher* having " joined us in the reference, and all of us having carefully ex- " amined all the papers and documents submitted to us, do " award &c." Now in the first place it does not appear quite clear that Mr. *Fisher* did not hear the parties, although I should rather incline to think he did not. But if he did not, it may be for any thing that appears, that the parties consent- ed to his taking the matter up on the information he might receive from the papers explained by his colleagues. In such case it would be all right. The arbitrators were not obliged to say any thing in the award about hearing the parties; and as no objection on that score was made by the plaintiffs themselves, we ought rather to presume that if they were not heard, it was because they did not desire to be heard. It does not appear on the face of the award that Mr. *Fisher* went on to consider the matter in the absence of the parties, and without their consent. There is therefore no error in law in that respect. The opinion of the court is that the re- port be confirmed.

*Report confirmed.*