## EZRA YOUNGLOVE *versus* GILES SANFORD AND RUFUS SETH REED

January 3, 1829

316

Hunt & Larned, attorneys for plaintiff (1823).
Larned & Woodbridge, attorneys for plaintiff (1826).
Larned & Torrey, attorneys for plaintiff (1828).
Sibley & Whitney, attorneys for Sanford (1823).
Elon Farnsworth, attorney for Sanford (1828).

## [OPINION]

Territory of Michigan }   Supreme Court
Supreme Court       }   Dec[r] Term 1828
Younglove vs Sanford & Reed.
   (For the facts of the case see State[t] & Exceptions on file.)
Opinion delivered by W[m] Woodbridge — Judge.

Some confusion has been occasioned in the argument of this case, by an indiscriminate reference to authorities without regard to the material destinctions which exist between the different sorts of awards which are known in the law. A reference to these destinctions, I consider materially important in whatever relates to the different remedies furnished by the law, for the enforcement of awards, as well as to what regards the mode of relief against them when defective.

—There exist in this Territory I apprehend 4 different sorts of awards,— or (to speak more accurately, since *all* awards, must in general contain the *same essential qualities*, tho' they vary, as regards the modes of enforcing them & the manner of obtaining relief against them, according to the form of submission;)— there may be said to be four different kinds of reference to arbitration.

First, where the submission is at Com. Law, by bond or simple contract. —— Where awards are made in pursuance of *such* a submission, the only mode of enforcing them, or of obtaining damages for their breach, is by action of debt— covenant or assumpsit, either upon the award, or upon the agreement of submission: —And if such award be invalid, the Deft. may show its invalidity in his defence.

Second,— Where the *submission is by writing in which is contained a stipulation by the parties that such submission shall be made a Rule of some Court.*— This form of submission generally supposes that no suit is pending, & is sanctioned by the 1st Sec. of our Arbitration law which is like the stat. of Wil. in England. In this class of cases the party prevailing has his choice of two forms of remedy:— 1st—by action, as in the first class of cases:— 2nd By causing the submission to be made a Rule, of the Court contemplated in the submission; & upon the coming in of the award, & upon proof that his opponent has refused to comply with it, to obtain an attachment against him, as for a contempt of Court. —If there be objections to the award, the party so proceeded against, has *his day in court*; — &,

setting out his objections to the award, may move to set it aside. (or if those objections appear, on the face of the award, he may also urge them in opposition to the prayer for process of attachment.)—These cross applications (if both be made;) are usually brought on & argued together. —The process by attachment is a severe remedy, & is in the nature of punishment:— it does not issue *ex debito justitiæ*—but is granted or refused, in the discretion of the Court, altho' the award be in itself perfectly valid. (1 Bac. 236— Kyd 312—16—17—18—333.

*A Third* species of submission, supposes a suit pending; — an agreement between the parties to refer, an application to the Court founded upon that consent, & a Rule of the Court, founded upon such application peremptorily referring it to one or more persons agreed upon by the parties, or appointed at their instance by the Court.

In the case of an Award made in pursuance of *such* a reference, the party prevailing may have his election of three different sorts of Remedy. —He may sue upon the award as in the other cases; —He may proceed by attachment; — Or, if at the time of the submission, he take a virdict, (a precaution very common in England) he may, if the award be not set aside, enter up his judgment upon the virdict, reducing the virdict to the amount allowed him by the Award:— And in this class of cases, a person may avail himself of the different modes of objecting to the award, if it be defective, already indicated in respect to the two first mentioned forms of remedy, & in the latter, he may, before judg$^t$ is entered up against him, & upon the coming in of the Award, move, for reasons assigned by him, to set it aside. —— This form of Reference is at Com. Law.

The *Fourth* kind of Reference is of statutory origin, & is in some things, peculiar to us. — An award, or, as it is more appropriately called in the statute, *a Report*, made in pursuance of such reference, is more limited perhaps in its scope, — more open to *exception*,— & can be enforced probably, in but *one* mode. —I am sensible that *this*, has, in practice been considered rather as a *substitute*, for the last mentioned species of award; —abrogating the Com. Law in this regard, or greatly modifying it,—so that the Com. Law mode of submitting by rule of Court a case pending no longer exists. —— But I prefer considering it as a *new* & distinct species.

Taking the 3$^d$ Sec. of the Act "con$^g$ arbitration" &c (Old Stat. 290)— in connexion with the 35th Sec. of the old judiciary Act (ib. 320-1.) — & it is perhaps fair to consider them parts of the same system; — this statutory mode of submitting a case pending, supposes its reference to *Three* persons; — but at Com Law a suit pending may be referred to *one*—or to *six* persons.—

In order to intitle the party to the benefit *of the Stat.* his case must *be within its provisions.*— A Reference of the case then to one person, or to 4, would either be incompetent & null, —or it would be a Com. Law submission: — Again, if the reference be under the Stat., the Referees *must be sworn:*— At Com. Law, no such thing is required.— Our Stat. too says, that if the award be confirmed, jud$^t$ *shall* be rendered;— but suppose the award require *things to be done* by *both parties?* — Must the jud$^t$ be double? —Must there be two judgments? —Suppose *collateral* acts be required by the award to be done, —& on both sides? —(& nothing is more common;)—as to sign releases—to execute conveyances—to build a House—or to deliver a horse in dispute? — How could judgments be rendered to enforce such an award? —And yet nothing is more true, than that such an award might be good at Com. Law. — But—under this class of cases, no award *can* be good, unless it be *on a demand for money;—& money only* can be awarded by it. ——This statutory submission then, is comparatively very limited in its range, & the remedy for

enforcing it, is by *jud*$^t$ for *money* & execution. —— Again, it is limited to the case of *accounts*, if the 2 statutory sections, are to be taken together as treating of the same subject matter. —At Com. Law, a suit for an assault & battery may be referred, as well as an action of assumpsit. —Further; it is evidently intended by the Law Makers, that under the provisions of our Statutes, such cases as may be so referred, may be referred by the Court, *without the consent of either party.*— This certainly can *never be legally done at Com*. Law: And, in this regard, if our Statute ever had any force, the nature of the provision, furnishes a sufficient reason for restricting it, by the most limited construction.

It has been insisted by Counsel, that the provision itself, never had any legal efficacy here, for that it was in restriction of the right of Jury trial:— The Ordinance of '87 secures to us beyond the reach of Legislative power, the right of Jury trial,— & I think this Court will, at all times feel disposed to assert the inviolability of that right.— But the Ordinance was not probably intended to introduce any *new* principle into the Law; —nor to extend the Jury trial to cases, to which in 1787, it did not apply; — as for example, to cases in Chancery.—— I am not at present aware of any cases of trials at law, to which the statutory provision alluded to, could possibly apply, without impugning upon the right of Jury trial, thus secured, unless it be the old Com. Law action of *Account*.—— That action could be brought originally, only as between Bailiffs, Receivers, & Guardians in soccage, — copartners in trade might bring it, but *only* in the character of Bailiffs or Receivers.— If this class of cases only was intended,— (& I am not prepared to admit that the provision objected to, can have legal force, in any other;) —& this course of proceeding be merely a modification of the old action of account, tho' made without the consent of the Deft., it would probably be sustained. —In that action two jud$^{ts}$ are rendered, —first, that the *Deft. account;* —upon which the Court, without the consent of parties, appoint *three auditors*, who hear testimony, —take the account, & report their decision to the Court, upon which a second & final jud$^t$ is rendered.—— There is a strong & manifest resemblance between the proceedings under the old action of account & those prescribed by our statutes.

But it was not probably the intention of the Legislature to confine this class of references within so narrow bounds; & the clause authorising the reference, without the consent of parties, was, I have no doubt stricken from the Statute, from a belief, that it was invalid for the reason suggested at the bar.

— There is no doubt, but that the case of Younglove & Sanford, is to be classed under one or the other of the two last mentioned species of submission. —It was a suit pending — & by consent of both parties, was referred, by rule of Court to arbitrators; & I know of no reason why the plff., if he had preferred it, might not have considered it a submission at Com. Law: —Such indeed at the opening of the argument I had considered it;— &, as no virdict by consent had been taken, was strongly inclined to overrule the motion for jud$^t$. —But,—the reference was to 3 persons:— They were sworn; —it was made after issue joined;— it appears from the pleadings & notice of set-off, that its detirmination involved *matters* of *account:* —Tho' not in all respects within the very letter of the law, yet the case thus seems, within the intendment of its provisions. —The plff. seems to have elected so to consider it, & I am upon the whole disposed so to view it.

—If it be a *reference, exclusively under the Statute*, then, I am not aware that *there can* be any remedy for enforcing it, except by judg$^t$— If the Report of the Referees be valid at all, *judgment*, as required by Stat. *must* upon application, be rendered upon it:— I do not perceive that you can any more bring action upon it,

than you could, upon a virdict;— like a virdict, it constitutes a part of the proceedings in a cause, *as yet unfinished.*— You cannot, if it be a statutory proceeding strictly, have *attachment* — for the statute does not give that remedy:— As a part of a judicial proceeding, in fieri, the end of which is pointed out by statute, it is fit that it should be set aside therefore, — or, that judg$^t$ be rendered upon it: —The parties have a right that the case should so terminate.

—But exceptions to it have been filed — & a motion to set aside, submitted & argued. —The Record says; — & the record I hold myself bound to believe, —that the motion was decided by this Court, & overruled. — What then remains for the Court now to do? —The plff. *demands* his judg$^t$— He claims it, as the sentence of the law:—The Deft. objects; —but *what* does he object? — the same he objected before!— No *new* defect is discovered— no supervening irregularity, has grown into existance:— it is the same old matter. — But *that* is acted upon;— it is *decided,* — says the record; — it is res adjudicata! — And are the proceedings of this Court, so utterly destitute of stability, as that we may deliberately, & after argument, decide one way today—have our jud$^t$ recorded; — & after the elapse of one term, decide the very same matter, in the very same case, directly otherwise? It is the *boast* of the *Lawyer,* that it is the *Law* which decides, & not the *man,* —he but declares the law:—but should such a course be sanctioned as is asked for, how frequently—& how justly too, will the decisions of Courts be attributed to the caprice of the Judges!

— But it is said, that this Court has never yet acted affirmatively, in favour of this Report:— that the Court has not yet confirmed it: —And Com. Law cases have been shown to us, by which it appears that Courts have refused attachments to enforce awards, in cases where they have refused to set aside the same awards. — There is no question but that such decisions have been made —& it is equally true that the law does sanction them. The *reason* is, that the *same* questions are not necessarily involved in the two motions. —An Award may be as free from legal defect, as an award ever was, & yet the Court may be perfectly correct in refusing an attachment to enforce it. — I have already said, attachments are not *ex debito justitiæ.*— When it has become impossible for a party to perform it, altho' the award be good, Courts will not attach for contempt, for not performing it; — So if a woman, after submission to an award marry:— So if the party become Bankrupt: —So in a very *hard case;* this *severe* remedy will be refused, & the party be driven to his action, in which he will recover either his debt, or damages for non performance — (1 Bac 236 &c). — But if this be a reference under the Statute, of a case pending, there are but two alternatives presented: —the Court must set aside upon exceptions taken, —or it must confirm, & *render judgment* upon it: —in this regard, the Report of the Referees, stands in the same predicament as the Report of Auditors in the action of account render. —In my view then, if the exceptions are not sufficient to set aside the report, jud$^t$ upon it is demandable ex debito justitiæ.

Our Statute is in part taken from the New Jersey Code —on reference to Coxe, Pennington & Southard's Reports, I do not find this precise question to have been made — Nevertheless, such seems the practical construction of the Statute there. — A section of our judiciary Act, which constitutes, with the N. Jersey law, our system, is said to have been literally adopted from the N. York Code: —The authorities read in the argument show, that such also is the construction there. — In the States of Pennsylvania, & Connecticut, statutory provisions, very like ours in this respect prevail, & such also, seems the rule of their Courts. —The rule is

fortified by analogy:—In the case of a submission at Com. Law, of a *suit pending*, the precaution of taking a virdict by consent, being pursued, the successful party, upon the coming in of the award, & no exceptions taken, —or if taken, being over-ruled, may *enter up his judgment, as matter of course,* upon his verdict, reducing that verdict so that it accord with the finding of the arbitrators— (1 Bos. & Pul. 480–97. 3 Bos & Pul 244— 1 East 401.— Cox 16–25. 2 Bin. 239. 587. 1 Bin 60— 45—109.) —And shall a plff. here, where both parties agree, by rule of Court, to refer a pending Suit to Referees, (under a Statute, which provides that jud$^t$ shall (without a verdict by consent,) be rendered for the sum reported to be due,) be, in this regard, in a worse situation, than where, at Com. Law the reference is made, & the same contingent right to jud$^t$ agreed to by the giving of a virdict by consent? —It is surely fit that the analogies of the law be preserved.

—If *good* exceptions be taken or filed in time, the Report ought to be set aside, —it must be;—it is not fit that such a Report should be accepted, or received by the Court. But if, being examined— argued & found insufficient the exceptions be overruled, — does it not follow that the Report is valid—fit to be accepted—& that jud$^t$ & execution be granted? —The decision of the motion to set aside involves all the same matter, which could be involved in a direct motion for judg$^t$, or for con-firmation: & logically, & legally, detirmines the question that jud$^t$ shall or shall not go.

But it is alleged, that on the motion to set aside, there was in fact no decision— for that the Court were equally divided. ——— If this allegation were fully made out by the record, it would be worthy of much consideration. —not having fully satis-fied myself as to the various record entries in this regard, at the argument — & not having been one of the Judges of this Court at the time of the argument of that motion, nor present when the Judges expressed their opinions upon that motion — I have since the last argument examined the Report & the exceptions, with attention & made full notes, with a view to aid me in coming to a right deci-sion, should I ultimately deem it my duty to take up the whole matter de novo ——— But on a more careful examination of the Journal record & files, I have not found it necessary to express any opinion on the validity of the exceptions:— for it seems to me that the allegation is not competent—being directly against the Record.——— The allegation, taken with reference to the Journal, implies either, that the record contains an *untruth* in matter of fact, —or in matter of law: I think it incompetent for this Court to consider it in reference to either alternative. ——— If a motion be made to the Court involving any given proposition, & it should happen that the Judges are equally divided, it follows, that the motion is overruled, & the converse of the proposition involved in it, established;———or,— that there is no decision. ——— But the record in this case says, that *there was a decision:* — it results therefore, upon the allegation of the party, either that the two Judges united in pronouncing that decision, & the allegation, is *against* the *record in matter of* fact, —or, that the Judges deduced from the fact of the matter, incorrect conclusions, —or in other words, made an *erroneous decision,* and the allegation is against the law, as an-nounced of record

———The Entries in the Journal, are not the mere acts of the Clerk; —they are the public acts of the Court: The provision contained in our Statute (New Code 124 Old Code —)(requiring the proceedings of the Court to be recorded daily in a Journal—& to be daily read—corrected & signed) — was made for a valuable purpose— I consider it to be a decided improvement in our system of Judicial proceedings. ——— The Court should be careful as to the matter inserted there; &

it becomes emphatically the interest & the duty of attornies of record to attend scrupulously to those entries, —that if they be in the slightest degree objectionable, they may be duly corrected at the reading. ——If an intire order decree, or record fact; be by accident omitted, the mistake clearly appearing, I do not now, go so far as to say, but that it may be added during the term—possibly, after—it being clearly shown to be a clerical mistake, & not the error of the Judge ——But when carefully read, corrected & signed, that which *is* entered, & passed upon, should never after, be varied altered or defaced. ——If so considered & preserved, the surest guaranty, which human weakness will allow, is furnished to the suitor, the attorney & to the public, against the weakness, the caprice or the wickedness of the Judge.

If the decision in question then, in *point of fact*, were not made, the party affected by it, should have attended to the reading of the Record, & had it corrected —at least he should have applied to that end, during the Term: He is too late now.

——But if the decision as recorded by order of the Court & by it *signed*, were, in itself erroneous, the objection is equally strong certainly, against this Court's now entertaining cognisance of the question: — I speak considerately, when I say — that it is without precedent, for a Court, to sit in judgment *upon its own* error: —Were this allowable, the Court,— parties,— suits,— the *Law* itself, would be continually *advancing* indeed,— but advancing in a circle, to which there would be no end! ——It belongs to a Superior Court, to correct the Errors of an Inferior Court; — public policy forbids, that the same Court should do it. (1 Bac. 166.)

——In considering the matter before the Court so far, I have been led to distinguish between the different kinds of awards which may have legal existence in this Country, with reference to the remedies by which they may be enforced, & the mode by which relief may be had against them. ——I have arrived at the conclusion that the plff. had a right to treat this award as a "Report"—under our Statutes. My first inclination of opinion was that this was a Common Law submission by Rule of Court:—In yielding to a different conclusion, I have felt embarrassed by some difficulties I have not mentioned:—but to which it is not necessary further to allude, because they were not adverted to by the Bar.

——I have also considered the *effect* of the proceeding which has been had, upon the Exceptions filed, & with less reluctance, have come to the conclusion, that it is to establish the award:

— I am now to consider of the difficulties in the way of the Statutary consequence, a *Jud'*;— & these difficulties are neither light, nor solitary.

——I shall not be found to contend against the principle that no binding jud$^t$ can be rendered against a party, who has not been allowed "*his day in Court*."— It would be against the plainest dictates of natural justice, to condemn a man, who not only has been unheard, — but who has had no legal opportunity to be heard.

—— Reed, has never been called into this Court, & has had no *day* here;— Yet the award, purports to be against *him* as well as against his partner—Sanford. —— A Partner has a general authority, by his Contracts, relative to the *partnership business*, to bind his Co-partner;— he may buy— & may sell:— He may make contracts, & bind the whole firm: — Why then *upon principle*, may he not submit to arbitration, a co-partnership concern, —when, if he would exert his undoubted right, he might, by conceding the *same fact*, which is *found by the award*, unalterably bind him, —to precisely the same extent? —— But the law is otherwise, & I do not now feel myself called upon, to seek for the reason upon which it is based. ——The law however, in such a case, binds each one by his *own act*. ——The award

shall bind Sanford, altho' it may not bind Reed. (1 Bac. 208.—2 Mod. 228. Kyd 42.) — Sanford only, has appeared in this suit:— Declaration has been filed against *him* only:— the award is binding upon *him*, ——Why then may not jud$^t$ also be rendered against him? —— To constitute a proper *reference*, under our Statute, the case undoubtedly should be such, as that judg$^t$ can be effectually rendered. —— Suppose then jud$^t$ rendered against Sanford, & the plff. should deem it proper, under our Stat. to make Reed a party to it, by Sci. fa., what will be his condition relatively to the jud$^t$ rendered? —— The cause he may show, will be, that he never submitted to the reference, &, therefore, shall not be bound by the Judg$^t$!— (See New Code 128. sec$^s$ 43—44— & old code        ) —— Will he, nevertheless be bound? — or shall there be a Jury trial, & a verdict? — The verdict may be— nay probably would be, for a different sum; —Shall a *different* jud$^t$ be rendered? — Shall there be two, outstanding jud$^{ts}$— for different sums against two different partners, & founded upon the same subject matter? — or shall Reed go clear, & Sanford only remain charged?

That a variety of difficulties of this description may occur, before the ultimate conclusion of the matter, I can readily imagine: ——But I am satisfied nevertheless that jud$^t$ may now be rendered, in virtue of the provisions of the 44th Sec. of the Judiciary Act, against Sanford alone, — & if ulterior difficulties should occur, I can only say, that the parties to this Suit, the one, or the other, of them, will have brought them upon themselves, & that it is not necessary, or proper perhaps, for this Court now to act upon them: — They are such difficulties, as may well be expected whenever the ordinary & settled forms of actions & of judicial proceedings, are widely departed from, by our Legislature.

Upon the whole, I am of the opinion that the plff. is *intitled* to jud$^t$ against Deft. Sanford, for the amount found by the Report of the Referees.

In conclusion, I think proper to remark, that, having been originally concerned as Counsel in this case, it has not been without much reluctance that I have now, notwithstanding the consent of both parties, approached it in a different capacity. — Nothing short of a sense of duty would have compelled me to do so.

—These considerations have pressed more heavily upon me perhaps, by reason of the zeal & apparent confidence with which the present Counsel for the Deft. have urged their defence —I admire such zeal & I greatly respect such industry, as they have evinced: — Without such industry, eminence in the profession can never be attained, nor great usefulness acquired; — with it, both are within the reach of the practitioner.

——But I deem it also proper to remark, that the very zeal & industry to which I allude, — the usefulness of which is so often felt by the Court,—— & always, by the advocate, — has, nevertheless a tendency, for a time, to influence his understanding, & lessen, in *his* estimate, the just weight of such principles as bear against him. —— When, the mental delusion so produced, shall have passed away; — or, a close observation of the operations of the human mind, for successive years of practice, shall have enabled him to counteract it, in its origin, then, & generally, not until then, will he estimate justly, the arguments of his opponents,—or listen with patience, to the adverse reasoning of the Court.

W$^M$ WOODBRIDGE

Notes made & references examined upon the reading of the Record—Award & Exceptions in the case of Younglove vs Sanford— but not to be considered as conveying my definitely formed opinions on the several points made; as, before I had

made up my mind fully in those matters, I had deemed it most proper, to consider them as intirely out of the case —The Notes are preserved however because the Judges were divided in opinion as to *the propriety* of considering those points made.

First Exception. ——The award, not within any submission—— for the *consent*, only extended to the end of the Term of *1825.*

——Note — The submission being in its origin applied for & consented to by *both* parties, &, *at their desire* being made the subject of a Rule of Court;— the subject-matter, i.e. the Rule, was fairly & necessarily, placed in the controul of the Court, to confirm—discharge,—enlarge or enforce.——Courts always do, & must, according to their *legal discretion*, & for the purposes of justice & law, exercise such controul over all its Rules, & those also, who are parties to them. ——It may be admitted that it is not legally competent for the Court without the consent of parties on both sides, to refer such a case as this;—yet when once *legally* referred, the legal validity of the reference, consists in its being a Rule *of the Court*, & *as such*, must be subject to its controul for all fair & proper purposes. —— Suppose that by some art—trick or fraudulent practice — one party to such submission, were to *prevent the Referees* from reporting within the time limited; —Will it be said that it is not in the power of the Court to enlarge the rule, for the purposes of justice? Suppose the agent or attorney, of an absent party, were to die, would not justice require, especially at the instance of the opposite party,—& that there might be a fairer trial,—that the Court should extend the Rule? —— Such, for aught that appears—might have been, & was, the case in the present instance. The Rule, by the order of the Court, was enlarged;— the cause which influenced the Court to do so, is not set out:— Can it therefore be inferred that the Court acted without cause? —from mere caprice? —— This would violate every fair & *legal* presumption. —— The truth is, the Court have the power to enlarge the time, *without* consent—in all cases where the submission is of a suit pending, by rule of Court. Kyd 96–7. (See also *arguendo* Kyd 359 —100–1. Sheridan's Practice 544. Kyd 359. —& see 1 Bin. 44–5—"Rule of reference by consent—Court *without consent*, sent award back for correction."

*Second Exception.* ——"By the terms of the Rule of Court of 1825 the plff. was to have suffered nonsuit, if there was no award *during the next Term.*"

Note. ——The plff. had the *whole* of the next Term within which to cause his award to be filed:— but during the Term, & *before the period* had elapsed, within which he was required to have produced his award,— the Rule was varied—the *time enlarge^d*,—he therefore could not have subjected himself to be nonsuited— provided the Court had the power, above affirmed, of enlarging the time.

*Third Exception.*—"The cause was heard by *two*—without the *Third*— The whole three should have *attended.*"

——Note — The case of Kingston vs Kinkaid & al. in Circuit Court of U. S. upon the Pen^a Stat. very like ours;— but more marked in its exclusion of Com. Law principles, is a sufficient answer to this objection — See Kydd (in note) 107–8–9–10—See also 1 Dal. 364 — & Kyd 106–7.—Sheridan 550–1.

*Fourth Exception.* "1. The Evidence produced does not support the allegations."

*Note* —— Of this, the *Referees* must judge: —Unless a *clear—palpable* mistake be shown, this objection can never avail

——"2nd Partnership accounts were produced, to show an individual debt."

—*Note.* ——This is a strong objection.— To compell Deft. to pay *twice*, or in the alternative, to turn Conkey round to a person perhaps less responsible, (his Co-Partner) *might* result, from the admission of this testimony;— an absent

party, may be prejudiced. —— The case in *principle* seems to me, tho' not so strong, yet very like that of authorising sundry persons plffs. to recover, upon a note given to a partnership, without any proof— or averment in the declaration, that plffs. were in truth the partners & all of them. —& if they *were* not, or were not the whole of them, then the real but absent partners, are driven to sue the *plffs* — *or*, the Deft. may be compelled to pay twice. ——If this Court should at any time consent to review the *principle* of the decisions made in Sill Thompson & Co. vs Smith— & the same vs M'Donell, I should be happy in the opportunity it would furnish, of examining such possible consequences: My present opinion is adverse to the principle of those decisions —& consequently inclined to sustain this part of the Fourth Exception:—— But until that principle shall be deliberately reconsidered, the *precedent*, established by those cases, in my view, covers this exception.—— It is not however conceded by Counsel for plff. that the testimony of plff., established a partnership between Younglove & Conkey:—— The contrary is alleged. ——And it is emphatically contended that such an allegation was precisely such an one, as was peculiarly proper for the Referees, & not for this Court to decide.

——The 3$^{d}$ & 4th objections under this head, resolve themselves into the 2nd.

The 5th objection under this Exception, contains the proposition "that by calling for & introducing Deft's books as Evidence, plff. made them evidence *for* as well as *against* the Deft.—"

Note — This proposition I apprehend to be true;— but the legal consequence contended for, does not of necessity follow ——It does not necessarily follow, that *like credibility* is imparted equally to all the different entries; —Still less does it follow that the Justice & Equity of each charge is thereby established. —— It was competent therefore, for the Referees to reduce the *quantum* or to reject altogether the charge of *percentage* upon the money admitted to have been rec'd by the Deft. —— The subject of this percentage claimed, being understood to have furnished the ground of this objection.

The 6th objection under the 4th Exception, is "that the Referees allowed interest on an unliquidated account."

—— Note. — A large sum of money received by one man belonging to & to be paid over to another, is not the proper subject of a *Book charge*, in the ordinary course of mercantile transactions: —— It does not appear that plff. sold & delivered to Deft. any common article of merchandize; nor that plff. delivered, on loan, or otherwise, this one large sum of money. —— I have no doubt of the truth of the proposition advanced, that the law does not, & will not, give interest on an unliquidated account, unless upon the footing of a special agreement to that effect: ——but I think that equity may well be supposed to require, that interest be allowed on a specific sum of money belonging to plff., & received of a 3$^{d}$ person & unreasonably detained by Deft. ——especially when it is considered that Deft. had the use of that money from 1814. to the Term of the commencement of this suit in 1822. without any other indemnity for its intermediate use——Simple interest alone during that period would have fallen little short of $700.

The 7th. Objection, under the 4th Exception is, "that the Referees, improperly examined one of the witnesses in the absence of both parties."

Note —— "It is no objection that after the Evidence was closed & the party gone, one of the witnesses was re-examined & gave different evidence." 1. Wil. Ab. 734. 1 Bos. & Pul. 175.

Strict Rules of Evidence are not exacted in Awards    N Y.T R. — Coxe 42 &c.